UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINALD CLEMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:13CV458 CDP |
| | ) |
| GEORGE A. LOMBARDI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Reginald Clemons, a prisoner at the Potosi Correctional Center, sued various PCC employees under 42 U.S.C. § 1983, claiming violations of his constitutional rights. Most of his claims and many of the defendants were dismissed on defendants' motion under Rule 12(b)(6), Fed. R. Civ. P. Clemons' sole remaining claim is that defendants Thomas Collins, Jeff Harper, and Daniel Dicus placed him in administrative segregation in retaliation for participating in privileged telephone conferences with more than one attorney. The defendants have now moved for summary judgment, arguing, among other things, that Clemons was not retaliated against; instead, he was placed in administrative segregation for committing an actual rule violation: engaging in a three-way call. Because the disciplinary action was supported by "some evidence" that Clemons committed a rule violation, I will grant the defendants' motion.

I.   **Summary Judgment Standard**

In determining whether to grant a motion for summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmovant, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

II.   **Background**

Under the Missouri Department of Corrections' Institutional Services Policy and Procedural Manual, "Third party and three way calls are not authorized. Participating in such calls may result in disciplinary action." (Defs.' Ex. A, Doc. 53-2, p. 2.) Though other terms are defined, neither "third party call" nor "three way call" is defined in the manual. The Potosi Correctional Center contracts with Securus Technologies for a platform to detect three-way and third party calls on

telephones used by inmates at PCC. (Defs.' Ex. B, Doc. 53-3.) Douglas Nickelson, an Office of the Inspector General investigator assigned to PCC, was responsible for monitoring the Securus platform. (*Id.*)

On March 9, 2012, Clemons spoke by phone to counsel representing him in his capital appeal. During that conversation, Nickelson observed the call platform and detected a three-way call using Clemons' unique inmate PIN. (*Id.*; *see also* Defs.' Ex. C, Doc. 53-4 (call detail report showing three-way calls).) He informed the administrative inquiry officer, Tim Lancaster, who in turn told defendant Dicus, who is a Corrections Officer II.

Three days later, on March 12, 2012, Dicus issued Clemons a conduct violation for having engaged in three-way calls on five occasions,[1] including on March 9. According to the conduct violation, making the three-way calls was "in direct violation" of several PCC rules: Disobeying an Order (Rule 20.1), Abuse of Telephone, Mail, Finance (Rule 38.4), and Procedures and Rules (Rules 41.1 and 41.2). (*See* Defs.' Ex. G, Doc. 53-8.) Although the record is not completely clear on this point, it appears that Clemons was immediately placed in administrative segregation after the reading of the conduct violation. Clemons alleges that defendant Harper placed him in mechanical restraints, strip searched him, and

---

[1] January 6, February 6, February 9, February 17, and March 9, 2012.

brought him to a cell without bedding or clothing for four or five hours after the conduct violation was issued. (*See* Pl.'s Resp., Doc. 60, pp. 10–11.)

On March 16, 2012, one of Clemons' lawyers, from the New York firm Simpson Thacher & Bartlett, faxed a letter to the PCC warden. He referenced a March 12 letter from the warden that apparently stated that "on numerous occasions during legal calls," the outside vendor Securus had detected three-way calls.[2] The lawyer wrote:

> No one from our office had spoken to Mr. Clemons since we received your letter, but when I tried to reach him today, Potosi personnel informed me that he is in administrative segregation in connection with this three-way calling issue. Please be aware that Mr. Clemons has never asked for a "three-way call" during a legal call with attorneys from this firm, and I am not aware of anyone other than his lawyers ever being on a secure legal call with him.

(Pl.'s Ex. B, Doc. 60-1, p. 3.) The lawyer asked when and why Clemons was placed in administrative segregation, how long he was expected to remain there, and whether he could help resolve the investigation into Clemons' three-way calls. He also stated that he had called Securus but was informed it did not have records of when the calls were made, and "any information about the calls would have to come from Potosi."

---

[2] The letter from the warden has not been made part of the record.

– 4 –

The lawyer asked the warden whether various situations were considered three-way calls: multiple lawyers on the same phone line, multiple lawyers on several phone lines, conference calls where multiple lawyers had dialed in, and transfers from a secretary to an attorney. (Pl.'s Ex. B, Doc. 60-1, pp. 2-3.) From the record, it appears that neither the warden nor anyone else from PCC responded to the lawyer's letter.

Three days later, on March 19, 2012, case manager and defendant Thomas Collins issued a disciplinary action report after a hearing, finding Clemons guilty of a violation of PCC Rule 20.1 (Disobeying an Order). Although the disciplinary action report is not entirely legible, it appears that Collins based his finding solely on Dicus' statement that Clemons made a three-way phone call. He recommended a 10-day sentence to administrative segregation, to begin March 19 and end March 28, 2012. (*See* Pl.'s Ex. L, Doc. 60-1, p. 47.)

On March 21, 2012, because he was in administrative segregation, Clemons was taken to a prescheduled legal visit in four-point restraints and without being able to access his legal property.

On April 3, 2012, defendant Dicus reissued the original conduct violation report, noting that it had been "delayed due to inquiry/investigation." (*See* Defs.' Ex. H, Doc. 53-9.) A second disciplinary hearing was held on April 4, with the same result. The record of the hearing includes a remark that Collins was "unable

to obtain" a statement from Clemons' lawyer. Collins recommended that Clemons be credited for his time served. (*See id.*) Defendant Harper reviewed both violation reports. (*See* Defs.' Ex. F, Doc. 53-7.)

Clemons grieved the violation, apparently requesting "numerous remedies," including that the Rule 20.1 conduct violation be dismissed and expunged. On November 27, 2012, deputy division director Dwayne Kempker granted the appeal because the re-issued conduct violation report was dated incorrectly. He dismissed and expunged the violation, finding the matter resolved. Among other things, he wrote, "Third party and 3-way calls are not authorized per PCC IS/SOP13-2.1-Offender Access to Telephones, III, D.2., which also includes legal calls." (Pl.'s Ex. H, Doc. 60-1, p. 41.)

### III. Discussion

To succeed on a Section 1983 retaliation claim, plaintiff must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in that activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). "However, claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).

The defendants first argue that they are entitled to summary judgment because Clemons was placed in administrative segregation for actual violation of a prison rule: engaging in a three-way call. As I stated before, it is clear that participating in a three-way call is contrary to PCC rules. However – as I also stated before – it remains unclear whether Clemons did so. Clemons has submitted a letter from the law firm he was speaking with on March 9 that indicates he did not engage in a three-way call. Excerpts from Clemons' sworn deposition, filed by the defendants, do not clear up the question:

> Q: Okay. Now, prior to this lawsuit and on March 9th, 2012, did you participate in a three way call?
> A: I didn't make a three way call.
> Q: Okay. But did you participate in a three way call?
> A: I can only speak for – I never requested a three way call, and I never made a three party call myself.[3]

(Defs.' Ex. D, Doc. 53-5.) This factual issue is further complicated by the fact that – apparently – there is no clear definition of what constitutes a three-way call. (*See* Pl.'s Exs. A and B, Doc. 60-1, pp. 1-4.)[4]

---

[3] This line of questioning apparently continues, but further answers by Clemons have not been made part of the record.

[4] In his Exhibit A, plaintiff Clemons submitted a 1995 memorandum to all PCC inmates that stated that MCI had "implemented the Three Way Conference Call Detection feature into the inmate telephone systems" and that the system was unable to distinguish between a a three-way call and call waiting: "If you are speaking to a subscriber to call waiting and that person chooses to put you on hold to answer a 'call waiting' call, the telephone company will detect this the same as a three way call and it will be treated in the same manner." This is apparently a predecessor system, and there is no indication that Clemons' March 9 conversation included call waiting, but it demonstrates the amorphous nature of a "three-way call" under PCC rules.

However, the defendants have submitted some evidence – the call log and affidavits from Dicus, Harper, and Nickelson – that indicates that the Securus system showed that Clemons engaged in a three-way call.  The Eighth Circuit has repeatedly held that if an impartial decisionmaker, such as a disciplinary review committee, finds that an inmate committed an actual violation of prison rules based on "some evidence," that is sufficient to bar the inmate's retaliation claim.  *See Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *Goff v. Burton*, 7 F.3d 734, 739 (8th Cir. 1993).

Normally, the conflicting evidence would present a genuine issue of material fact that would prevent summary judgment.  However, defendant Collins, the PCC case manager, reviewed Clemons' statement and a written statement from defendant Dicus and concluded that Clemons was "guilty based on the evidence from the violation." (Defs.' Ex. H, Doc. 53-9, p. 2; *see also* Pl.'s Ex. L, Doc. 60-1, p. 47 ("Findings: Guilty based on [corrections officer] II Dicus' statement . . ."))  Under Eighth Circuit law, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield*, 511 F.3d at 831.  This is true even "when there is substantial evidence to the contrary," *id.* (citing *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993)), and even when the conduct violation was later expunged.  *See*

*Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006). Therefore, the faxed letter from Clemons' lawyer and Clemons' own testimony – as well as Clemons' contention that the call log is not actually from Securus – are not enough to defeat summary judgment on his retaliation claim.

## IV. Conclusion

The defendants are entitled to summary judgment because their decision to place Clemons in administrative segregation was based on "some evidence" that he committed a violation of PCC rules. Because this finding is dispositive, I will not address the defendants' other arguments.

For the reasons stated above,

**IT IS HEREBY ORDERED** that the defendants' motion for summary judgment [#52] is granted.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

						_____
						CATHERINE D. PERRY
						UNITED STATES DISTRICT JUDGE

Dated this 4th day of June, 2014.